UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| YVONNE GOMEZ, et al., | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | C.A. NO. C-04-255 |
| | § | |
| CITY OF LAREDO, TEXAS; et al., | § | |
|     Defendants. | § | |

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs Yvonne Gomez and Carlos Gutierrez bring suit individually and as heirs at law for the shooting death of Gabriel Gutierrez. Gabriel Gutierrez was the son of Yvonne Gomez and the brother of Carlos Gutierrez. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

Plaintiffs are suing Officer Armando Hernandez under 42 U.S.C. § 1983. They allege he violated the Fourth Amendment when he shot and killed Gabriel Gutierrez on May 9, 2002. Plaintiffs sue the City of Laredo under § 1983 as well, alleging Gutierrez's death was a result of the City's inadequate training and hiring of Officer Hernandez. Plaintiffs also bring suit against Laredo Police Officers F.J. Lopez, F. Lozano, E. Florez, J. Montemayor, R. Martinez, G. Cantu, A. Carrillo, M. Raines, and R. Gonzalez, under 42 U.S.C. § 1985. Plaintiffs allege these officers conspired to deprive them of their access to the courts and to deny them of their equal protection

rights by intimidating and interfering with witnesses. Finally, plaintiffs bring state law negligence claims against all defendants.

On April 1, 2005, defendants filed a Motion for Summary Judgment (D.E. 38) based on qualified and official immunity. Laredo Police Officers F.J. Lopez, F. Lozano, E. Florez, J. Montemayor, R. Martinez, G. Cantu, A. Carrillo, M. Raines, and R. Gonzalez, seek dismissal of the claims against them on the grounds that plaintiffs have failed to produce any evidence of a conspiracy or racial or class-based animus. The City of Laredo argues that plaintiffs offer no evidence of municipal liability under *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

Summary judgment is appropriate when the movant can demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c). In opposing summary judgment, the nonmovant may not rely on conclusory allegations in the pleadings, but rather must set forth sufficient evidence supporting a claimed factual dispute to require a fact finder to resolve the parties' differing versions of the truth at trial. *Whelan v. Winchester Production Co.*, 319 F.3d 225, 228 (5th Cir. 2002). If the nonmovant fails to make a showing on an element for which he bears the burden of proof, the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The evidence must be viewed in a light most favorable to the nonmovant. *Whelan*, 319 F.d 228.

### I.  Factual Summary

On the afternoon of May 9, 2002, Officer Armando Hernandez was on patrol duty in Laredo, Texas, when he heard a broadcast from dispatch reporting that two men had car-jacked a taxi, robbing its driver at knife point.  Shortly thereafter, Officer Hernandez saw the stolen taxi driving south on Arkansas Street.  When Officer Hernandez turned on his emergency lights and siren, the taxi failed to stop.  During the pursuit the suspects allegedly rammed the police car with the stolen taxi.  The taxi eventually turned onto Chihuahua Street—a dirt-paved cul-de-sac. Officer Hernandez followed the taxi and rear-ended it when it made an unexpected stop.

After both vehicles came to a complete stop, Officer Hernandez exited his squad car and unholstered his weapon, believing the suspects would try to flee on foot through a wooded area located at the end of the cul-de-sac. Instead, the taxi accelerated forward, abruptly made a sharp u-turn, and then drove directly toward the squad car. Officer Hernandez was positioned between the squad car and the taxi and believed that the driver was attempting to run him over.  As Officer Hernandez moved to avoid the oncoming taxi, he repeatedly fired his weapon.  The parties agree that at least some of the shots were fired  as the taxi passed Officer Hernandez.

Immediately after the shooting, the taxi veered to the right, turned north onto Arkansas Street, and collided with another vehicle. The driver of the stolen taxi, Gabriel Gutierrez, was shot in the back of his shoulder and arm.  He was taken to a hospital and pronounced dead shortly after arrival.  The passenger, Carlos Gutierrez,

was arrested and charged with robbery and evading arrest. After pleading guilty to evading arrest, Carlos Gutierrez was sentenced to serve ten years with the Texas Department of Criminal Justice and five years of community supervision.

## II.    Analysis

A.    Qualified Immunity

Qualified immunity is a two-step inquiry. At summary judgment, the Court first asks, taken in the light most favorable to the party asserting the injury, do the facts alleged[1] show the officer's conduct violated a constitutional right. *Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (quoting *Saucier v. Katz*, 533 U.S. 194, 206 (2001)). If there remains a genuine issue of material fact over whether the officer's conduct violated a constitutional right, the Court then asks whether the right was clearly established at the time of the events giving rise to suit. *Saucier*, 533 U.S. at 206. To determine whether a right is clearly established, the Court asks whether it would be clear to a reasonable officer that his conduct was unlawful in the particular situation he confronted. *Id.* at 201.   This second part of the inquiry focuses on  whether the

---

1. The word "alleged" seems to suggest the inquiry is made only on the pleadings. However, the Fifth Circuit has made very clear that at summary judgment, the first step of the qualified immunity analysis is based on all evidence before the Court, and not just the pleadings. *Mace v. City of Palestine*, 333 F.3d 621, 624 n.7 (5th Cir. 2003) (deciding that the step-one qualified immunity analysis at summary judgment is like all other summary judgment inquiries, and that "to limit it to a consideration of the pleadings alone would destroy the central purpose of granting immunity from suit."); *Reese v. Anderson*, 926 F.3d 494, 497 (5th Cir. 1991). Plaintiffs agree to this point in their response to the motion for summary judgment. (D.E. 40 at paragraph 13). The case law often uses the terms "alleged" and "alleged facts" because the qualified immunity doctrine was designed to be raised early in litigation on a motion to dismiss, where review would necessarily be on the allegations in the pleadings.

officer had fair notice that his conduct was unlawful, as judged against the backdrop of the law at the time. *Brosseau*, 543 U.S. at 198.

*1. Alleged Constitutional Violation—* Claims of excessive force are governed by the Fourth Amendment's objective reasonableness standard. *Id.* at 197. Here that means plaintiffs must show Gabriel Gutierrez suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable. *Flores v. City of Palacios, et al.*, 381 F.3d 391, 396 (5th Cir. 2004). The parties do not dispute that Gabriel Gutierrez suffered a significant injury and that his death resulted directly and only from the shooting. The disputed element is whether the force Officer Hernandez used was objectively unreasonable.

When deadly force is used, additional rules of law apply to the issue of objective unreasonableness. *Brosseau*, 543 U.S. at 197. For example, it is objectively unreasonable for an officer to use deadly force to seize an unarmed, non-dangerous suspect. *Brosseau*, 543 U.S. at 197 (quoting *Tennessee v. Garner*, 471 U.S. 1, 11 (1985)). However,

> [w]here the officer has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force. Thus, if the suspect threatens the officer with a weapon *or there is probable cause to believe that he has committed a crime involving the* infliction or *threatened infliction of serious physical harm, deadly force may be used if necessary to prevent escape*, and if, where feasible, some warning has been given.

*Id.* (quoting *Garner*, 471 U.S. at 11) (emphasis added).

In calculating objective reasonableness in deadly force cases, the Court also must allow for the fact that "police officers must sometimes make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97 (1989). The Court looks to the totality of the circumstances and must avoid substituting its own judgment for that of the officer. *Id.* If Officer Hernandez had probable cause to believe that the escaping suspects posed a threat of serious physical harm to himself or others, or that the escaping suspects committed a crime involving the threatened infliction of serious physical harm, the use of deadly force was not objectively unreasonable. *Garner*, 471 U.S. at 11.

The events surrounding the shooting are supported by little evidence. Officer Hernandez's testimony is the most comprehensive (D.E. 40, exhibit C, and D.E. 38, exhibit A). There is no testimony in the record from the convicted passenger, Carlos Gutierrez. Armando Rangel, a resident of Chihuahua Street where the shooting occurred, gave deposition testimony that he saw the taxi make a u-turn and "almost hit the police officer." (D.E. 40, exhibit D at 9). Mr. Rangel said he thought the Police Officer was defending himself when he shot at the taxi. (D.E. 40, exhibit D at 12). Plaintiff's argue that the deposition testimony of another individual who was at the scene, Sara Rangel Martinez, shows that the Taxi did not try to run-over Office Hernandez. Martinez's deposition testimony does not show this. It does not create a genuine fact issue over whether Officer Hernandez had probable cause to believe the

6

suspect posed a serious physical threat. At most, it may show that the shooting began before the u-turn, but while the taxi was reversing towards Officer Hernandez. But there is no fact dispute over whether the taxi drove towards the officer at some point moments before the shooting. Martinez testified that at the point she heard the shots, she was not watching what was going on, but rather was concentrated on getting her children to safety. (D.E. 40, exhibit F at 13–16). Furthermore, her testimony is contradictory and unclear.[2] The other two persons present and later questioned, Graciella Morales and Amanda Morales, testified they did not see what occurred when the shots were fired. (D.E. 40, exhibits E and G).

Even if ultimately justified, the death of a citizen at the hands of the police is always tragic, and must receive the utmost scrutiny. It is undisputed that Gabriel Gutierrez was evading arrest when he was shot. Plaintiffs admit that the taxicab had been reported stolen. Plaintiffs offer no evidence to dispute that Officer Hernandez had reason to believe the suspects in the taxi had just committed a violent felony and

---

2. Q: Okay. And at the point you heard the shooting, were you watching what was going on?
   A: No, because I ran towards my children.
   . . .
   Q: So, did you see him shoot the first shot?
   A: Yes, but I didn't see more or less to what—what area he was shooting.
   . . .
      Mr. Lopez: I am going to object to the question, because I don't think reverse is "reversiacer."

It is unclear whether the witness was referring to the u-turn, or was indicating that the taxi was going in reverse at the time she heard shots. The objection over "reversiacer"[sic] shows there may have been translation difficulties.

were armed.[3] After the robbed taxi driver called 9-11, the police dispatch broadcast gave Officer Hernandez probable cause to believe that the suspects had just car-jacked the taxi at knife-point. The suspects were driving at a high speed through a residential neighborhood in the early afternoon. During the vehicle pursuit, Officer Hernandez says the suspects rammed his police car with the stolen taxi. Reasonably believing the suspects were armed, violent, and determined to get away, Officer Hernandez was then confronted by the suspects as they drove the vehicle directly at him. Understandably, Officer Hernandez says he feared for his life.[4]

Plaintiffs argue that even if Gutierrez was attempting to run Hernandez over, Gutierrez no longer posed a threat once the taxi passed the officer, and the firing of his weapon after the taxi had passed is the objectively unreasonable use of force. On this point, plaintiffs rely on the physical evidence at the scene showing that shots may have been fired once the taxi passed, and on the testimony of Sarah Rangel Martinez. Officer Hernandez states in his own affidavit that the holes in the drivers-side window indicate he fired his weapon as the taxi was passing by him. Nevertheless, plaintiffs offer no evidence to rebut that Officer Hernandez was trying to arrest an escaping felony suspect who had just "threatened infliction of serious physical harm" to the taxi

---

3. The passenger in the taxi was charged with robbery and evading arrest, and plead guilty to evading arrest pursuant to a plea agreement. Officer Hernandez's affidavit states that dispatch reported to him the taxi had been stolen at knife point. A statement in the record from the robbed taxi driver, written in Spanish, details what the victim reported to the 9-11 operator.

4. In addition to the knife, Texas law recognizes that a vehicle may be a deadly weapon. *Walker v. State*, 897 S.W.2d 812 (Tex. Crim. App. 1995).

driver and the Officer himself. *Garner*, 471 U.S. at 11. Even if Officer Hernandez fired the fatal shots once he was out of the immediate danger of being run-over, the suspects still posed a serious threat of physical harm to others in the area.[5] Officer Hernandez further complied with *Garner* by giving some warning—his marked police vehicle followed the stolen taxi with its emergency lights and sirens on. *Id.*

Plaintiffs have also sought to establish that Hernandez is not entitled to qualified immunity because he did not act in accordance with generally accepted police procedures and the Laredo Police Department's official policy.[6] The Fifth Circuit has held that negligently effectuated arrests that violate officially promulgated police policy and procedures do not automatically amount to Fourth Amendment violations, even where the negligent arrest results in death. *Fraire v. City of Arlington*, 957 F.2d 1268, 1275–76 (5th Cir. 1992); *Young v. City of Killeen*, 775 F.2d 1349, 1353 (5th Cir. 1985) ("The constitutional right to be free from unreasonable seizure has never been

---

5. Relying on Officer Hernandez's deposition testimony, plaintiffs argue that because Hernandez says he fired out of concern for his own safety and was unaware of anyone else in the area, the Court cannot consider whether the suspects posed a threat to anyone other than Officer Hernandez. However, probable cause is an objective standard that does not depend on the subjective thoughts and motives of the officer. *United States v. Jaime*, 473 F.3d 178, 182 (5th Cir. 2006); *Whren v. United States*, 517 U.S. 806, 813 (1996) ("Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis. . . we have been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers).

6. Plaintiffs rely the affidavit of Gerald W. Hildebrand for several of their allegations. Hildebrand is an expert in criminal justice. His report offers no forensic analysis. It is conclusory in nature and based on a selective and incomplete application of law.

equated by the Court with the right to be free from a negligently executed stop or arrest").

Considering all the evidence in the light most favorable to the plaintiffs, there is no genuine issue as to certain material facts necessary to plaintiffs' case. Defendants have offered evidence that Officer Hernandez had probable cause to believe the escaping suspects had committed a crime involving the threatened infliction of serious physical harm. Plaintiffs offer no evidence to rebut this. Defendants have offered evidence that Officer Hernandez had probable cause to believe the suspects posed a serious risk of physical harm to others in the area. Plaintiffs offer no evidence to rebut this. As a matter of law, the use of deadly force in this case was not objectively unreasonable. *Garner*, 471 U.S. at 11. Plaintiffs' § 1983 claims against Officer Hernandez are dismissed on the basis of qualified immunity. *Brosseau*, 543 U.S. at 197.

2. *Clearly Established Law*—Even if the Court assumed, for the sake of argument, that Officer Hernandez's conduct violated the Fourth Amendment, plaintiffs cannot show on these facts that all reasonable officials in Officer Hernanez's circumstances would have known his conduct violated the Fourth Amendment. *See Thompson v. Upshur County*, 245 F.3d 447, 457 (5th Cir. 2001). The right violated must have been clearly established in a particularized sense. *Brosseau*, 543 U.S. at 198. Fourth Amendment excessive force claims involve an area of law "in which the result depends very much on the facts of each case." *Id.*

In 2002, there were cases in this circuit and others finding no constitutional violation where officers shot suspects who were or had been fleeing in vehicles. *Reese v. Anderson*, 926 F.3d 494, 497 (5th Cir. 1991); *Stroik v. Ponseti*, 35 F.3d 155, 159 (5th Cir. 1994); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir.1992); *Cole v. Bone*, 993 F.2d 1328, 1333 (8th Cir. 1993). These cases show that so long as the officer had probable cause to believe the suspects posed a threat of serious physical harm to the officer or others, there was no Fourth Amendment violation. Here, because there was probable cause to believe the suspects posed a threat to others in the area, it was not clearly established that his conduct violated the Fourth Amendment. Additionally, there is no fact dispute that at some point the taxi drove towards Officer Hernandez. The firing of his weapon was one continuous transaction in response to this tense, uncertain situation. Even if Officer Hernandez was out of immediate danger when he fired the fatal shots, it cannot be said that defending himself in this way was a clearly established violation.

B.   Official Immunity

Government employees, including police officers "are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority." *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex. 1994). Police officers are exercising discretion while performing their duties. *Id.* at 654. This includes the pursuit of suspects. *Id.* at 655. Because Officer Hernandez was exercising

discretionary duties within the scope of his authority, plaintiffs must show that he was not acting in good faith when he exercised deadly force. They must show that no reasonable person would have acted as the officer. *Id.* at 657.

The use of deadly force in Texas is governed by TEX. PEN. CODE § 9.51(c) (Vernon 2006). The language of this statute mirrors the Supreme Court's articulation of the constitutional boundaries of deadly force. *Compare id., with Garner*, 471 U.S. at 11. Because the standard here is the same as the § 1983 excessive force standard, the result is the same. Officer Hernandez is entitled to official immunity from all state law claims. *Chambers,* 883 S.W.2d at 653.

### C.   Civil Conspiracy

Plaintiffs also sue under 42 U.S.C. § 1985, alleging defendants engaged in a conspiracy to obstruct their access to courts and deny them of their rights to equal protection. In support of the claims, plaintiffs offer the following evidence: (1) witness Amada Morales gave deposition testimony that an investigator encouraged her to leave out certain information from her statement (D.E. 40, Exh. G, p. 19-20, 22-23); (2) Officer Hernandez gave deposition testimony that an investigator drew a diagram of the scene incorrectly (D.E. 40, Exh. C p. 32-34); (3) Investigator Jorge Maldonado gave deposition testimony that he destroyed a diagram drawn by witness Sarah Rangel Martinez (D.E. 40, Exh. H, p. 53-54); and (4) witnesses to the shooting were taken to the police station or hospital instead of being questioned at their homes.

To sustain a claim that defendants conspired to obstruct plaintiffs' access to courts under § 1985(2), or that defendants conspired to deny them their equal protection rights under § 1985(3), plaintiffs must allege and show an invidious race- or class-based discriminatory animus. *Bray, et al. v. Alexandria Women's Health Clinic, et al.*, 506 U.S. 263, 267–268 (1993); *Hilliard v. Furguson*, 30 F.3d 649, 652 (5th Cir. 1994); *Bradt*, 634 F.2d 796, 801 (5th Cir. 1981); 42 U.S.C. §§ 1985(2)–(3) (2006). There is no evidence in the record of any race or class-based animus. Plaintiffs have not even alleged or defined a class for this claim. Because plaintiffs fail to show any evidence in support of this required element, all § 1985 claims are dismissed. In addition, plaintiffs' 42 U.S.C. § 1986 claims are dismissed as they depend on a viable § 1985 conspiracy claim. *See Bradt*, 634 F.2d at 801.

### D.     Municipal Liability

Municipalities face § 1983 liability "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . ." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 694 (1978). Proof of municipal liability sufficient to satisfy *Monell* requires: (1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy (or custom). *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.2001). To establish liability based on official policy, the policy must be adopted and promulgated by the municipality's lawmaking officers. *Pineda, et al. v.*

*City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002). To establish liability on the basis of custom, plaintiffs can offer evidence of "[a] persistent, widespread practice of city officials or employees which, although not authorized by officially adopted and promulgated policy is so common and well settled as to constitute a custom that fairly represents municipal policy." *Pineda*, *et al.*, 291 F.3d at 328.

Plaintiffs allege that Gabriel Gutierrez's death was a result of the City of Laredo's inadequate training and hiring of Officer Hernandez. A municipality will be held liable under § 1983 failure to train theory if plaintiff shows that "(1) the training or hiring procedures of the municipality's policymaker were inadequate, (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy, and (3) the inadequate hiring or training policy directly cause the plaintiff's injury." *Baker v. Putnal*, 75 F.3d 190, 200 (5th Cir. 1996) (citing *City of Canton v. Harris, et al.*, 109 S.Ct. 1197, 1205–07 (1989)).

Plaintiffs have offered no evidence of an official policy or a widespread informal custom which caused a violation of federal or constitutional rights. They have not shown with any specificity that the City of Laredo inadequately trained Officer Hernandez or any other of its police officers. They have provided no evidence showing a deliberate indifference on the part of the City, nor have they shown a causal connection between an alleged failure to train and the violation of rights. Indeed, plaintiffs do not even respond to this portion of defendants' motion for summary judgment. At this stage in the litigation, plaintiffs cannot rely on mere accusations.

*Whelan*, 319 F.3d at 228; FED.R.CIV.P. 56(e). Plaintiffs' § 1983 claims against the City of Laredo are dismissed. *Baker*, 75 F.3d at 200.

### E.  State Law Claims

In the alternative to their § 1983 claims, plaintiffs bring suit under the Texas Tort Claims Act, alleging that the events giving rise to suit were "a direct and proximate result of the negligence of [d]efendants" (D.E. 26, p. 7, ¶ 20). Absent a waiver, the city of Laredo has sovereign immunity and is not liable for acts within its government function. *Dallas County Mental Health & Mental Retardation, et al. v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998). While immunity has been waived for certain torts under the Texas Tort Claims Act, that liability does not extend to a "claim arising out of assault, battery, false imprisonment, or any other intentional tort." TEX. CIV. PRAC. & REM. CODE ANN. § 101.057 (Vernon 2006). To the extent plaintiff's state law claims against defendant City of Laredo are based upon an intentional tort theory, such claims are barred by sovereign immunity. *Id.*

Plaintiffs also construct their claim so as to fit it within the tangible personal property exception to the Tort Claims Act. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (Vernon 2006). However, as to the City of Laredo, they have offered no evidence supporting, nor any argument detailing, how a claim based on the tangible personal property exception could be possible. The claim is still a mere conclusory allegation and thus insufficient to survive summary judgment. *Whelan*, 319 F.3d at 228; FED.R.CIV.P. 56(e).

Finally, Plaintiffs have made state law negligence claims against the individual defendant officers. These negligence caused of action includes claims for wrongful death damages under TEX. CIV. PRAC. & REM CODE §§ 71.002, 71.021 (Vernon 2006). The elements of a negligence action in Texas are: 1) legal duty owed by one person to another; 2) a breach of that duty; and 3) damages proximately caused by the breach. *D. Houston, Inc. v. Love*, 92 S.W.3d 450, 454 (Tex. 2002). A person is liable under the wrongful death statute for "damages arising from an injury that causes an individual's death if the injury was caused by the person's . . . wrongful act, neglect, carelessness, unskillfulness, or default." TEX. CIV. PRAC. & REM CODE § 71.002 (Vernon 2006).

The plaintiffs have not shown any evidence supporting their negligence claims against defendants Lopez, Lozano, Flores, Mntemayor, Martinez, Cantu, Carrillo, Raines, and Gonzalez. Indeed, the only fathomable colorable negligence claim would be against Officer Hernandez—and all state law claims made against defendant Officer Hernandez are dismissed on grounds of official immunity. *See supra* section II(B). Therefore, the Court grants summary judgment in favor of all remaining defendants on all state law negligence claims.

### III.  Conclusion

Officer Armando Hernandez is entitled to qualified immunity from all § 1983 claims and official immunity from all state law claims. Plaintiffs fail to present evidence of a § 1985 conspiracy, of municipal liability, or of negligence on the part of

the investigating officers. Lastly, the City of Laredo is entitled to sovereign immunity from all state law claims. Because plaintiffs have not demonstrated that there remain fact issues warranting a trial, Defendants' Motion for Summary Judgment (D.E. 38) is GRANTED, and all claims are DISMISSED with prejudice.

ORDERED this 7th day of March, 2007.

*Hayden Head*
_____
HAYDEN HEAD
CHIEF JUDGE